IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY J. DAVIS-LILLY<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:20-CV-01261<br><br>JUDGE SARA LIOI<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION

Plaintiff Anthony J. Davis-Lilly filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On May 25, 2021, this matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the Court **AFFIRM** the Commissioner's decision regarding Mr. Davis-Lilly's disability.

PROCEDURAL BACKGROUND

Mr. Davis-Lilly initially filed for DIB and SSI on June 30, 2010, alleging a disability onset date of February 1, 2009. (Tr. 889). Both claims were denied initially on September 13, 2010, and upon reconsideration on March 8, 2011. (*Id.*). On June 20, 2012, an Administrative Law Judge ("ALJ") issued a decision finding Mr. Davis-Lilly not disabled. (*Id.*; *see also* Tr. 6-25). The Appeals

1

Council denied Mr. Davis-Lilly's request for review on August 5, 2013, making this the final decision of the Commissioner. (Tr. 889; *see also* Tr. 1-3). Mr. Davis-Lilly then filed a complaint in this Court challenging the Commissioner's final decision. (Tr. 889). On June 3, 2014, this Court reversed the ALJ's June 20, 2012 hearing decision, remanded the matter for further proceedings based on the conclusion that the "opinion of Dr. Pickholtz had not been adequately evaluated," and directed the ALJ to obtain clarification of Dr. Pickholtz's opinion. (*Id.*; *see also* Tr. 1111-29). The Appeals Council in turn remanded the matter to the ALJ to comply with this Court's order. (Tr. 1134-36).

After a new hearing on March 25, 2015, a second ALJ issued a decision on May 8, 2015, denying Mr. Davis-Lilly's petition and finding him not disabled. (Tr. 1137-59). Mr. Davis-Lilly filed written exceptions to that decision on June 10, 2015, and the Appeals Counsel again remanded the case for a decision consistent with that of this Court. (Tr. 889-90, 1160-65).

On August 30, 2017, a third ALJ denied Mr. Davis-Lilly's claim, concluding he was not disabled. (Tr. 890, 1166-1200). On May 13, 2019, the Appeals Council again remanded to the ALJ, with the direction to:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p), including the evidence provided by Dr. Pickholtz . . . . In so doing, evaluate the treating and nontreating source opinion[s] pursuant to the provisions of 20 CFR 404.1527 and 416.927 and nonexamining source opinion[s] in accordance with the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence using *current* Social Security policy rulings. As appropriate the Administrative Law Judge may request the treating and nontreating source[s] provide additional evidence and/or further clarification of the opinion[s] and medical source statements about what the

2

> claimant can still do despite the impairments (20 CFR 404.1520b and 416.920b).

(Tr. 890, 1201-06).

With that instruction, a fourth ALJ received additional evidence from Dr. Pickholtz dated July 19, 2019. (Tr. 2437-39). The ALJ conducted a hearing on December 3, 2019 and received testimony from Mr. Davis-Lilly and Vocational Expert ("VE") Deborah Lee. (Tr. 921-1086). Mr. Davis-Lilly was represented by his attorney, Molly Tefend, at this hearing. (*Id.*). The ALJ issued a partially favorable decision on February 5, 2020, finding Mr. Davis-Lilly disabled as of April 27, 2016. (Tr. 889-919).

Mr. Davis-Lilly appealed this decision, but the Appeals Council denied Mr. Davis-Lilly's request for review, making the fourth ALJ's partially-favorable decision the final decision of the Commissioner. (Tr. 1-3). *See* 20 C.F.R. §§ 416.1455, 416.1481. Mr. Davis-Lilly timely filed this action on June 9, 2020. (ECF #1).

## FACTUAL BACKGROUND

### I. ADMINISTRATIVE HEARING

The following summarizes the testimony presented during the most recent hearing before the fourth ALJ on December 3, 2019.

Mr. Davis-Lilly testified he could not cook for himself or reheat food in the microwave, but he was able make himself a sandwich. (Tr. 926). He could not wash dishes or do laundry, but he could take out the trash. (*Id.*). He maintained a driver's license and could go shopping, but his issues with PTSD and anxiety would "overtake" him, making it difficult to shop for himself. (*Id.*). He testified he did not have any hobbies and did not belong to any organizations, groups, or a church. (Tr. 927). His anxiety prevented him from traveling to see his grandchildren, from eating

3

out at a restaurant, or other public social events. (*Id.*). These issues with anxiety and PTSD, along with pain, muscle spasms, and incontinence, prevented him from sleeping at night. (Tr. 929-30).

Mr. Davis-Lilly explained he had previously worked for the U.S. Postal Service as a driver and mail handler, and last worked in 2010, when he was escorted out. (Tr. 930-34). According to Mr. Davis-Lilly, he was denied work and threatened with arrest when he attempted to continue working at the postal service. (*Id.*). He had a worker's compensation claim, but was denied unemployment insurance benefits, although he did receive some income from 2011-2013. (Tr. 930-31). When prompted by his attorney, Mr. Davis-Lilly testified he has had conflicts with his coworkers; one such conflict was with a supervisor who had allegedly sexually assaulted him. (Tr. 948). Mr. Davis-Lilly reported this abuse to the EEOC, but continued to experience a hostile work environment even after the supervisor retired. (Tr. 948-49).

Mr. Davis-Lilly testified he would have 5-7 migraines per day, and complained of the side effects of his prescribed medications; over-the-counter medications appeared to be more effective for him. (Tr. 936-41). When questioned by the ALJ about taking Paxil and trazodone for his depression and anxiety, he responded "yeah, I think I remember that." (Tr. 941). He no longer attended counseling or therapy after completing a group program 3-4 years earlier. (Tr. 941-42).

Mr. Davis-Lilly testified he was prescribed a rollator walker by the VA due to frequent falls. (Tr. 942). He could only stand for 20-30 minutes before needing to sit down, and could only sit for 20-30 minutes before he needed to move around again; he could not walk a block without pausing to rest. (Tr. 942-44).

Mr. Davis-Lilly stated he had difficulty with his focus and attention, and had periods of memory lapse. (Tr. 944-45). He did not attribute this memory lapse to his previous alcohol use; he

4

had not used alcohol for "a few years" although he still smoked marijuana. (Tr. 925-26, 945). He testified he has not been diagnosed as having bipolar disorder, but noticed increased irritability in recent years. (Tr. 945).

The VE then testified. After asking clarifying questions regarding Mr. Davis-Lilly's prior work at the U.S. Postal Service, the VE classified that previous work experience as a material handler (heavy, semi-skilled, SVP 3)[1] and mail carrier (medium, semi-skilled, SVP 4). (Tr. 951-52). When the ALJ gave the VE Mr. Davis-Lilly's current limitations (able to perform at the light exertional level, occasionally climb stairs and ramps, no ladders, ropes or scaffolding, occasionally balance, stoop, kneel, crouch and crawl, frequently reach in all directions, and handle, finger, and feel, but should not be exposed to unprotected heights, concentrated vibration, direct sunlight, only moderate noise, and only simple, routine tasks with simple, short instructions and decisions, few workplace changes, no fast-paced production quotas, no interaction with the public, and only superficial interaction with coworkers and supervisors), the VE testified that the hypothetical individual would not be able to perform Mr. Davis-Lilly's past work. (Tr. 956). However, that individual could perform work as a non-postal mail clerk (light, unskilled, SVP 2), housekeeper (light, unskilled, SVP 2), or as an inspector hand packager (light, unskilled, SVP 2). (Tr. 957). But if the hypothetical individual could only stand and walk for two hours, and sit for six hours, in an eight-hour workday, those jobs would be precluded. (Tr. 957-58). Available jobs with sedentary limitations would include a final assembler (sedentary, unskilled, SVP 2), sorter (sedentary,

---

[1] SVP is an acronym for Specific Vocational Preparation, and reflects "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worked situation." *See* Dictionary of Occupational Titles, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).

unskilled, SVP 2) or addresser (sedentary, unskilled, SVP 2). (*Id.*). Finally, if that hypothetical individual required an additional 40 minutes of unscheduled breaks, or if the individual was off-task for about one-third of the day, all work would be precluded. (Tr. 958).

## II. PERSONAL AND VOCATIONAL EVIDENCE

Mr. Davis-Lilly was 43 years old when his initial application was filed, and was 54 at the time of the July 19, 2019 hearing. (Tr. 897). Initially, Mr. Davis-Lilly was defined as a younger individual age 18-49; the fourth ALJ found him disabled as of April 27, 2016, at which time he was defined as an individual closely approaching advanced age. (Tr. 906; *see also* 20 C.F.R. §§ 404.1563, 416.963). Mr. Davis-Lilly was previously employed in a composite job of Material Handler and Mail Carrier; this work was "substantial gainful activity" under the Act, was performed long enough for Mr. Davis-Lilly to achieve average performance, and was performed within the relevant period. (Tr. 906; *see also* 20 C.F.R. §§ 404.1565 and 416.965). The VE testified that, given his residual functional capacity, Mr. Davis-Lilly's past relevant work could no longer be performed. (Tr. 906). Accordingly, Mr. Davis-Lilly was unable to perform past relevant work. (*Id.*).

## III. RELEVANT MEDICAL EVIDENCE[2]

Mr. Davis-Lilly had a psychological consultative examination conducted by Herschel Pickholtz, Ed.D., on February 24, 2011 and submitted on March 2, 2011. (Tr. 617-25). Dr. Pickholtz noted that Mr. Davis-Lilly had not previously been diagnosed as having psychiatric

---

[2] Mr. Davis-Lilly challenges only the fourth ALJ's determination regarding his mental health impairments and not his physical impairments. (Pl.'s Br. 9-17). Specifically, he challenges the fourth ALJ's evaluation of the opinions of Dr. Lewin, Dr. Konieczny, and Dr. Pickholtz opinions. As such, he waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). Therefore, I summarize only the records and testimony relevant to Mr. Davis-Lilly's mental health.

conditions and that his current estimated IQ was not consistent with his premorbid levels of functioning. (Tr. 622). Dr. Pickholtz attributed this inconsistency to "exaggeration" and "selective levels of motivation" during the examination. (*Id.*). Based on that examination, Dr. Pickholtz diagnosed Mr. Davis-Lilly with the following conditions:

- Depressive Disorder, NOS [not otherwise specified], severity unspecified due to exaggeration;

- Anxiety Disorder, NOS, mild;

- Cognitive Disorder, severity mild, unless there is corroboration of significant organic deterioration; and

- Personality Disorder, NOS, related to passive/aggressive features and exaggeration.

(Tr. 623-24). Dr. Pickholtz also noted "moderate psychosocial stressors at worst." (*Id.*). Mr. Davis-Lilly's Global Assessment of Functioning (GAF) score was assessed at 55, "at least," based on procedures established in the DSM-IV.[3] (*Id.*). When reviewed on his four work-related mental capabilities—understanding, remembering, and following instructions; maintaining attention and performing simple repetitive tasks; relating to others; and ability to withstand the stresses and pressure associated with day-to-day work activities—Dr. Pickholtz found Mr. Davis-Lilly's impairments were "moderate" in each area.[4] (Tr. 623). In addition, Mr. Davis-Lilly was found to

---

[3] GAF is scored on a scale of 0 to 100, and reflects the psychologist's judgment of the individual's "level of functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, *The Diagnostic and Statistical Manual of Mental Disorders*, Introduction (5th ed. 2013). The most recent Diagnostic & Statistical Manual of Mental Disorders (DSM-V) no longer uses the GAF scale for several reasons, including "questionable psychometrics in routine practice." *Id.*

[4] The SSA assesses functional abilities on a five-point scale ranging from none, mild, moderate, marked, and extreme. 20 C.F.R. § 404, Subpt. P, App. 1. Although there may be some differences between a clinician's and an ALJ's assessment of a claimant's limitations, the SSA does not consider these limitations as disabling unless the impairments result in "extreme limitation of

7

have "moderate" limitations in his capacity to perform daily activities and socialize with others appropriately. (Tr. 622). Mr. Davis-Lilly's assessment was based on his current functioning, prior to receiving any mental health treatments. (*Id.*). In Dr. Pickholtz's opinion, the severity and degree of Mr. Davis-Lilly's impairments would improve with future psychiatric treatment. (*Id.*).

Dr. Pickholtz was also asked to provide an addendum to his February 24, 2011 report prior to the December 3, 2019 hearing before the fourth ALJ. (Tr. 2437-39). Dr. Pickholtz submitted this addendum on July 19, 2019. (*Id.*). In it, he explained that Mr. Davis-Lilly did not appear to be severely impaired in his attention, concentration, and intellectual levels of functioning, based on his daily activities. (Tr. 2438). Instead, his daily activities "suggest a mild to possibly a moderate impairment but it was rather difficult to assess reliably due to his tendencies toward exaggeration." (*Id.*). Dr. Pickholtz also noted that Mr. Davis-Lilly's premorbid levels of intellectual functioning were at least in the average range, as evidenced by his honorable discharge from military service and his decade of work at the postal service; Mr. Davis-Lilly had stopped working due to physical problems and not psychiatric complaints. (Tr. 2438). In Dr. Pickholtz's opinion, Mr. Davis-Lilly has a "mild to moderate impairment relative to performing simple work activities," which condition "does not appear to be severe." (*Id.*).

J. Joseph Konieczny, Ph.D., also conducted a psychological evaluation of Mr. Davis-Lilly on October 31, 2014. (Tr. 1473-80). Dr. Konieczny concluded that Mr. Davis-Lilly suffers from PTSD, Other Specified Depressive Disorder, and Depressive Episodes with Insufficient Symptoms. (Tr. 1475). Although no psychometric assessment was conducted, Dr. Konieczny stated that Mr.

---

one or marked limitation of two" areas of function. *Id.* A "moderate" limitation is generally not considered disabling. *Id.*

Davis-Lilly suffered from borderline intellectual functioning. (*Id.*). In this exam, Dr. Konieczny stated that Mr. Davis-Lilly "reported a lengthy and consistent formal work history" and had served in the United States Army from 1985 to 1987, until he received an honorable discharge. (Tr. 1473-74). Dr. Konieczny also noted symptoms of PTSD stemming from Mr. Davis-Lilly's military service; as a result, Mr. Davis-Lilly suffered from intrusive thoughts, flashback episodes, hypervigilance, and nightmares. (Tr. 1474). Otherwise, Mr. Davis-Lilly was oriented as to person, place, and time, and had only mild to moderate impairment in his ability to concentrate and attend to tasks. (Tr. 1475).

Dr. Konieczny also found that Mr. Davis-Lilly had "mild to moderate" limitations and "diminished coping skills" in his ability to understand, remember, and carry out instructions; his attention, concentration, and persistence in single- and multi-step tasks; his responding appropriately to supervision and coworkers in the work setting; and his ability to respond to pressure in the work setting. (Tr. 1476). Dr. Konieczny also submitted a checklist form indicating that Mr. Davis-Lilly had mild to moderate limitations in nearly all areas of functioning due to his diagnosed mental health disorders. (Tr. 1477-78). Only with respect to his ability to respond appropriately to usual work situations and to changes in a routine work setting did Mr. Davis-Lilly have a "marked" limitation. (*Id.*).

In March 2011, Caroline Lewin, Ph.D., a state agency psychologist, reviewed Mr. Davis-Lilly's record evidence. (Tr. 99-112). Dr. Lewin found that Mr. Davis-Lilly should be able to cope with simple instructions in a routine setting and could concentrate most of the time, but might function best if he were not around a lot of coworkers. (Tr. 109). In most work-related categories, Mr. Davis-Lilly had moderate or no limitations. (Tr. 108-09). However, he had marked limitations

in his ability to understand and remember detailed instructions and in his ability to carry out detailed instructions. (*Id.*). According to Dr. Lewin, Mr. Davis-Lilly was "undermotivated," "not fully cooperative," and "may have overstated his limitations" such that it "might frustrate a supervisor as far as getting things done." (*Id.*). He might need prompting from a supervisor to persist at tasks. (Tr. 109). But even so, his non-exertional limitations did not "significantly erode the occupational base" and the reviewing examiners recommended a determination of not disabled. (Tr. 111).

## THE ALJ'S DECISION

The ALJ's decision dated February 5, 2020 included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since the alleged onset date of disability, February 1, 2009, the claimant has had the following severe impairments: cervical and lumbar herniated discs, right knee degenerative joint disease, carpal tunnel syndrome, left shoulder rotator cuff tear, hearing loss, migraine headaches, adjustment disorder with mixed anxiety and depressed mood and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. Since February 1, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that prior to April 27, 2016, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasionally climb stairs/ramps, no climbing ladders, ropes, or scaffolding; occasional balance, stoop, kneel, crouch, crawl; frequently reach in all directions; frequently handle, finger,

and feel; no exposure to unprotected heights, concentrated vibration, direct sunlight; no more than moderate noise level; perform simple routine tasks with simple short instructions, simple decisions, few workplace changes, no fast pace production quotas, superficial interaction with coworkers and supervisors, but no interaction with the public.

6. After careful consideration of the entire record, the undersigned finds that beginning on April 26, 2016, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasionally climb stairs/ramps, no climbing ladders, ropes, or scaffolding; occasional balance, stoop, kneel, crouch, crawl; frequently reach in all directions; frequently handle, finger, and feel; no exposure to unprotected heights, concentrated vibration, direct sunlight; no more than moderate noise level; perform simple routine tasks with simple short instructions, simple decisions, few workplace changes, no fast pace production quotas, superficial interaction with coworkers and supervisors, but no interaction with the public; and needs four additional breaks lasting ten minutes each.

7. Since February 1, 2009, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. Prior to the established disability onset date, the claimant was a younger individual age 18-49. Since the established disability onset date, the claimant's age category has changed to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to April 27, 2016, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on April 27, 2106, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Prior to April 27, 2016, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

12. Beginning on April 27, 2016, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1506, 416.960(c), and 416.966).

13. The claimant was not disabled prior to April 27, 2016, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

14. The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

(Tr. 889-909).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up). A district court

12

cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted).

Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

13

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only where each element of the analysis, including inability to do other work, and meets the duration requirements, is satisfied will the claimant be determined disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

To evaluate the severity of mental impairments in adults, the Commissioner applies a "special technique" at each step of the five-step analysis. 20 C.F.R. §§ 404.1520a; 416.920a. Under this special technique, the Commissioner first evaluates pertinent symptoms, signs, and laboratory findings to determine whether a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If the Commissioner finds a medically determinable impairment, it then rates the degree of functional limitation resulting from the impairment. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner rates the degree of functional limitation based on the extent to which the claimant's impairment interferes with the "ability to function independently, appropriately, effectively, and on a sustained basis," and therefore considers "such factors as the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.*

DISCUSSION

On appeal, Mr. Davis-Lilly argues the fourth ALJ failed to properly evaluate the mental health evidence of record. (Pl.'s Br. 9). Specifically, the ALJ failed properly to evaluate the opinions provided by the state agency psychologist, Dr. Lewin, and by the psychological consultative examiners, Dr. Konieczny and Dr. Pickholtz. (*Id.* at 9-17). He further contends he should be found disabled as of his alleged onset date of February 1, 2009. (*Id.* at 2, 17). The Commissioner asserts the ALJ adequately evaluated the mental health evidence of record. (Def.'s Br. 9-18). As set forth below, I agree with the Commissioner and thus recommend the Court affirm the Commissioner's decision finding Mr. Davis-Lilly disabled as of April 27, 2016.

I. **THE ALJ PROPERLY EVALUATED THE MENTAL HEALTH EVIDENCE OF RECORD.**

Mr. Davis-Lilly contends the ALJ improperly discredited the opinions of the state agency psychologists because their opinions were inconsistent with the RFC finding and inconsistent with the record. (Pl. Br. 9). But reviewing the record, the decision, and appropriate legal and agency authority reveals that the ALJ properly evaluated the mental health opinion evidence, incorporated these opinions into her RFC determination, and that substantial evidence supports her decision finding Mr. Davis-Lilly disabled as of April 27, 2016.

**A. The ALJ properly evaluated Dr. Lewin's opinion.**

Mr. Davis-Lilly argues the ALJ did not properly integrate Dr. Lewin's evaluation into his RFC and instead had a "predetermined" RFC, contravening 20 C.F.R. § 404.1545(a)(3). (Pl.'s Br. 10-12). In support, Mr. Davis-Lilly claims the ALJ should not have afforded Dr. Lewin's opinion only "'some' weight" and that it was "backwards" for the ALJ to analyze the opinion as

15

"inconsistent with the assigned mental residual functional capacity." (Pl.'s Br. 10-11). This argument is without merit and misconstrues the ALJ's assessment of Dr. Lewin's opinion.

An ALJ is required to assess a claimant's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). Further, the ALJ is vested with the discretion to weigh all the evidence; the district court may not try the case *de novo* or resolve any purported conflicts in evidence. *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009).

Dr. Lewin's opinion stated that Mr. Davis-Lilly's mental impairments presented a moderate limitation in his ability to perform daily activities, maintain social functioning, and maintain concentration, persistence, and pace. (Tr. 104). She suggested that Mr. Davis-Lilly may function best without coworkers around, and that he might need prompting from a supervisor to stay on task. (Tr. 109). Contrary to Mr. Davis-Lilly's argument, the ALJ found this opinion to be "*not* inconsistent with the assigned mental residual functional capacity," and accordingly afforded Dr. Lewin's opinion some weight. (Tr. 904) (emphasis added). After considering the entire record—including Dr. Lewin's opinion—the ALJ determined that Mr. Davis-Lilly had the RFC to perform light work, and included limitations such as "perform[ing] simple routine tasks with simple short instructions, simple decisions" and only "superficial interaction with coworkers and supervisors, but no interaction with the public." (Tr. 905). These accommodations were made explicitly with Mr. Davis-Lilly's mental health limitations in mind. (*Id.*). Mr. Davis-Lilly has not demonstrated reversible error.

### B. The ALJ properly evaluated Dr. Konieczny's opinion.

Mr. Davis-Lilly also attacks the ALJ's evaluation of Dr. Konieczny's opinion and finds fault with the "limited weight" the ALJ afforded his opinion. (Pl's Br. 12-14). He points to Dr.

16

Konieczny's opinion that Mr. Davis-Lilly has "marked" difficulty in interacting with others and responding appropriately to work-related situations. (*Id.* at 14; Tr. 1477-78). According to Mr. Davis-Lilly, the ALJ's insufficient explanation of the weight given to Dr. Konieczny's opinion is apparently against the weight of the evidence and fails to establish a "logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996)). But the ALJ is not bound by a physician's opinion. *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014). Neither is the ALJ required to give great weight to a physician's opinion, particularly when that opinion is not supported by sufficient clinical findings. *Id.*

Here, Dr. Konieczny diagnosed Mr. Davis-Lilly with PTSD, a depressive disorder, depressive episodes with insufficient symptoms, and borderline intellectual functioning. (Tr. 1475). No formal psychometric assessment was conducted. (*Id.*). Dr. Konieczny also indicated on a form that Mr. Davis-Lilly would have marked difficulty in responding appropriately in work situations due to his mental health diagnoses. (Tr. 1478). All other areas of functioning were marked as either having "mild" or "moderate" limitations. (Tr. 1477-78). Although such forms are commonly used, they are not particularly persuasive; an ALJ is not required to give any particular weight to such forms. *Curler*, 561 F. App'x at 471. The ALJ considered Dr. Konieczny's opinion and provided it limited weight. (Tr. 904). She explained that Dr. Konieczny's opinion of Mr. Davis-Lilly's limitations was not supported by the weight of the evidence, and that there was no evidence of intelligence testing to support the borderline intellectual functioning diagnosis. (*Id.*). Even so, the ALJ limited the RFC in accordance with the available mental health evidence and

17

accommodated Mr. Davis-Lilly's limitations in persistence, pace, workplace changes, work instructions, and interactions with others. (Tr. 904-05).

I find no fault with the ALJ giving Dr. Konieczny's opinion limited weight, nor do I see a failure to establish a logical bridge between the evidence of record and the resulting determination by the ALJ. The ALJ's RFC finding was supported by substantial evidence.

### C. The ALJ properly evaluated Dr. Pickholtz's opinion.

Finally, Mr. Davis-Lilly challenges the ALJ's evaluation of Dr. Pickholtz's opinion and asserts similar arguments as those outlined above. Namely, the ALJ gave Dr. Pickholtz's opinion considerable weight, but did not accurately incorporate this opinion into the RFC finding. (Pl's Br. 15). Again, Mr. Davis-Lilly argues the ALJ failed to provide a logical bridge in her assessment of Dr. Pickholtz's opinion and the limitations contained in the RFC. (Pl.'s Br. 13-14).

Again, this Court may not reweigh the evidence presented on appeal. *Collins*, 357 F. App'x at 668. This Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. If a claimant argues the ALJ has failed to provide a rational articulation of the grounds of her decision, this Court is to "give the opinion a commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999).

Here, the ALJ gave Dr. Pickholtz's opinion and his later addendum considerable weight. (Tr. 904). She reiterated Dr. Pickholtz's conclusion that Mr. Davis-Lilly had mild to moderate impairment "at worst" when performing one- to two-step tasks, and found that this was supported by the record as a whole. (Tr. 904-05). She explained that other examining sources had findings

consistent with moderate impairment—sources that have been outlined in greater detail above. (*Id.*). Accordingly, the ALJ limited Mr. Davis-Lilly to simple decisions with few workplace changes, no fast-paced production quotas, and simple routine tasks. (Tr. 905). The ALJ's decision was supported by substantial evidence, consistent with the record, and adequately explained. Applying a common-sense reading to this RFC uncovers no reversible error.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I find the ALJ's decision supported by substantial evidence. I therefore recommend that the Court **AFFIRM** the Commissioner's decision.


Dated: August 27, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE